**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**THERESA ROBBINS,**

                    **Plaintiff**

          **v.**                                        **Case No. 1-09-cv-559-HJW**

**COLUMBUS HOSPITALITY, LLC,**

**and**

**BRIAN REAGON,**

                    **Defendants**

**ORDER**

          This matter is before the Court upon the defendants' respective motions for summary judgment (doc. nos. 37, 60).  Plaintiff opposes both motions.  Defendants have each filed proposed findings of fact and conclusions of law (doc. nos. 55, 61) which plaintiff has highlighted as true, false, or irrelevant (doc. nos. 58, 63).  Having considered the entire record, including the parties' briefs, proposed findings of facts and conclusions of law, and related filings (doc. nos. 37, 42, 45, 55, 58, 60-63, 72), the Court will <u>deny</u> the motion by defendant Columbus Hospitality, Inc. ("UC") and <u>deny in part and grant in part</u> the motion by defendant Brian Reagon ("Reagon") for the following reasons:

**<u>I.  Standard of Review</u>**

          **Rule 56(a) of the Federal Rules of  Civil Procedure, as recently  amended on December 1, 2010, provides in relevant part that:**

-1-

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant show s that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Amended Rule 56(c)(1) further provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, docum ents, electronically stored information, affidavits or declarat ions, stipulations (including those made for purposes of the motion only ), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produc e admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).

The Committee Notes explain that the "s tandard for granting summary judgment remain unchanged" and that amendment "will not affect continuing development of the decisi onal law construing and apply ing" the standard. Fed.R.Civ.P. 56, Committee Notes at 31. Under Rule 56, the moving party bears the burden of proving that no genuine issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

## II. Factual Allegations

On August 5, 2009, plaintiff filed th is action against her for mer em ployer Columbus Hospitality and her immediate supervisor Brian Reagon, claiming sexual harassment and wrongful discharge/constructive discharge in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and Ohio Rev.Code §§ 4112 (doc. no. 1 at ¶¶ 4, 16, 20).

In September of 2007, plaintiff began working as a waitress at the Max & Erma's restaurant operated by Columbus Hospitality in Wilmington, Ohio. Plaintiff, who is a 20 year old female college student, alleges that she was "subjected to hostile work environment sexual harassment by defendants through pervasive, offensive and unwelcome comments and actions of a sexual nature" over the next six months (doc. no. 1 at ¶¶ 4, 8).

Plaintiff alleges that Brian Reagon, the restaurant's general manager and her immediate supervisor, "knew of the sexual harassment and failed to prevent it or discipline the perpetrators, one of whom was Reagon himself" (doc. no. 1 at ¶ 11). Plaintiff further contends that she complained to management but that defendants failed "to take any action to assure plaintiff's safety and freedom from harassment in the workplace" (Id. at ¶ 13). Plaintiff alleges that on April 7, 2008, she was constructively discharged when she "was compelled to resign her employment due to the failure of defendants to assure her safety and freedom from harassment" (Id. at ¶¶ 14, 17). In her brief, plaintiff indicates that Reagon had previously been disciplined for a complaint of inapproprite conduct toward a female employee (doc. no. 42 at 3).

At her deposition, plaintiff was asked about specific facts underlying her harassment claims. Plaintiff alleged that: 1) on three or four occasions, Reagon came up behind her and began touching her ears and that she told him to stop; 2)

-3-

Reagan later came up to her and said that a "little birdie" had told him she was "sleeping with everyone at the front desk;" when plaintiff protested that everyone there was female, he replied "I think its fun being a little trampy, don't you?" 3) on another occasion, Reagon asked her if her nail polish was "left over from her other job," insinuating she was a prostitute; 4) on another occasion, Reagon asked plaintiff "what she was going to do" with an extra corn dog; when plaintiff told him he could get in trouble for saying such things, he taunted her; 5) Heather Becker, a female manager, made the untrue statement that plaintiff was having sex with two different male cooks; and 6) co-workers spread others rumors about plaintiff's alleged promiscuity, i.e. they called her "Skittles" and said she liked to "taste the rainbow," which plaintiff understood to mean that she was "sleeping with everybody in the restaurant" (Robbins Depo. at 41-43, 45-46, 49-50, 52-53, 56-57, 61-62).

Plaintiff also indicates that when, at the request of a manager, she stayed overnight at the adjacent hotel so that she could open the restaurant the next day and cover for employees unable to drive in the snow, she heard rumors that she was "sleeping with a manager" (doc. no. 41, Kathleen Robbins Affidavit, ¶ 6). Plaintiff indicated she felt humiliated and often cried about this treatment, but kept working because she needed the money for school loans (doc. no. 31, Robbins Depo. at 53).

Plaintiff complained to an assistant manager, Matt Dougherty, who according to defendants, told the employees to stop the rumors and do their jobs (doc. no. 60 at 3, 9). However, plaintiff alleges that the rumors and sexual innuendo about her alleged promiscuity continued (doc. no. 31, Robbins Depo. at 41, 67). On or about

March 19, 2008, plaintiff's attorney sent Columbus Hospitality a letter regarding the alleged harassment. Plaintiff continued to work at the restaurant for another month, although she indicates the managers were "really mad" at her (Id., Robbins Depo. At 82). She alleges that she felt compelled to quit and did so on April 17, 2008.

## III.  Analysis

After conducting discovery, the defendants filed separate motions for summary judgment. Although plaintiff erroneously suggests that defendants are seeking summary judgment only on the federal claim, defendants' briefs specifically indicate that they are moving for summary judgment on both the state and federal sexual harassment claims (doc. nos. 37 at 1;  60 at 1).

## A.  Relevant Statutes

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e-2(a)(1). Similarly the Ohio Revised Code makes it unlawful "[f]or any employer, because of the ... sex ... of any person ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A).

Ohio courts have held that claims for hostile work environment brought under Ohio Rev. Code § 4112 are evaluated using the federal evidentiary standards and analysis used under Title VII. Hampel v. Food Ingredients Specialties, Inc., 729

N.E.2d 726, 731 (Ohio 2000); Hawkins v. Anheuser-Busch, Inc, 517 F.3d 321, 333 (6th Cir. 2008); Brandal v. Columbus City School Dist., Slip Copy, 2010 WL 5014306 (S.D.Ohio). This Court's analysis under Title VII therefore applies equally to plaintiffs' claim under Ohio Rev. Code § 4112.

B. Title VII Claims May Only be Brought Against Employer

Title VII actions may only be brought against "employers." Akers v. Alvey 338 F.3d 491, 500 (6th Cir. 2003); Reagan v. City of Knoxville, Slip Copy, 2010 WL 2639933, *3 (E.D.Tenn.)(dismissing Title VII claims against individual defendants because they were not the "employer"). Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b).

The Court of Appeals for the Sixth Circuit has repeatedly held that "Title VII does not create individual liability for individuals in supervisory positions." Akers, 338 F.3d at 500. Hence, plaintiff may not assert a Title VII claim against her supervisor Brian Reagon because this individual defendant is not plaintiff's "employer" within the meaning of Title VII. See, e.g. Satterfield v. Karnes, --- F.Supp.2d ----, 2010 WL 3365943, *9 (S.D.Ohio) (observing that "Title VII does not provide for individual liability"). Defendant Reagon is entitled to summary judgment on the federal sexual harassment claim.

However, supervisors and managers may be held liable for violations of Ohio Rev. Cove § 4112. See Genaro v. Cent. Transp. Inc., 84 Ohio St.3d 293, 293 (1999).

"For purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable w ith her/his employ er f or discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112." Id. at 293;  Satterfield, 2010 WL 3365943 at *9.  Hence, defendant Reagon is not entitled to summary judgment on the state claim of sexual harassment on this ground.

## C.  Sexual Harassment, Hostile Work Environment

"Title VII af fords employ ees the right to w ork in an environment free from discriminatory intimidation, ridicule, and insult." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986).  Under Title VII, a hostile work environment claim must allege that a workplace "permeate[s] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employ ment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  "Isolated incidents, ... unl ess extremel y serious, w ill not amount to discriminatory changes in the terms or conditions of employ ment." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000).

To establish a prima facie case of sexual harassment based on hostile work environment, plaintiff must show that: 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment;  3) the harassment was based on her sex; 4) the harassment creat ed a h ostile w ork environment; and (5) employ er liability.  Ladd v. Grand Trunk Western Railroad, Inc., 552 F.3d 495, 500 (6th Cir. 2009); Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009).  At the last step, the basis for employer liability depends on whether the plaintiff is

alleging harassment by supervisors or co-workers. <u>Williams v. General Motors Corp</u>. 187 F.3d 553, 561 (6th Cir. 1999); <u>Berryman v. SuperValu Holdings, Inc</u>., Slip Copy, 2010 WL 1257838, *12 (S.D. Ohio). A court addressing a claim involving harassment by co-workers <u>and</u> supervisors should conduct a single, unified analysis of the first four steps. <u>Williams</u>, 187 F.3d at 563.

Defendants argue that plaintiff has failed to make a prima facie case. At the first step, defendants acknowledge that the plaintiff is female, and thus, a member of a protected class (doc. no. 60 at 11). Next, defendants argue that plaintiff has not shown that she was subjected to unwelcome harassment based on her sex. They argue that the overall conduct complained of by plaintiff simply was not severe enough to rise to the level of sexual harassment that resulted in a hostile work environment (doc. no. 37 at 6).

In considering whether the alleged harassment is sufficiently "severe or pervasive" to constitute a hostile work environment, courts must examine the totality of the circumstances. <u>Harris</u>, 510 U.S. at 23; <u>Williams</u>, 187 F.3d at 562. The harassing behavior must be "severe or pervasive" enough to create an environment that a reasonable person would find objectively hostile or abusive, and that the employee subjectively regarded as hostile or abusive. <u>Harris</u>, 510 U.S. at 21-22. Factors to consider include the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. <u>Hafford v. Seidner</u>, 183 F.3d 506, 512 (6th Cir. 1999).

Defendant Reagon downplays the various incidents and characterizes them as not bei ng "so severe and pervasive     as to create a hostile employ     ment environment" (doc. no. 37 at 5).[1]  He points to other cases w here the conduct was found insufficient to be actionable, but   acknowledges that there is no bright line between sexual harassment and unpleasant workplace conduct, citing Hathaway v. Runyon, 132 F.3rd 1214, 1221 (8th Cir. l998).

Defendant Reagon cites to a case where the court found that five incidents of harassing conduct occurring over f ive-year period did not constitute severe or pervasive conduct.  Bowman, 220 F.3d at 464.  In contrast, the various incidents in the present case all occurred during a relatively short period of approximately six months and cannot fairly  be characteriz ed as " isolated" in comparison.  To the extent defendant Reagon suggests that there w     ere an insufficient number of incidents to constitute harassment, there is no specific number that would support a claim of sexual harassment.  Abeita v. Transam. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998) (finding fact issues existed as to whether employee was subjected to hostile environment sexual harassment).

Although defendant Reagon contends that he "never directed sexual remarks to plaintiff" and that his remarks required an inference by plaintiff (doc. no. 37 at 6), his alleged  statements were either overtly sexual or could reasonably be inferred as such.  For example, he allegedly commented to plaintiff that a "little birdie" had

---

[1]The United States Supreme Court uses the phrase "severe or pervasive," rather than "severe and pervasive."  Harris, 510 U.S. at 21.

told him she was "sleeping with everyone at the front desk," and that "I think it's fun being a little trampy , don't y ou?" Alt hough Reagon denies say ing this, he also allegedly told plaintiff that her nail polish must be "left over from her other job," which plaintiff reasonably inferred meant prostitution. His comment about "w hat she could do" w ith an extra corn dog could reaso nably b e inferred as sexual innuendo, even though he denies any such innuendo. Regarding his "flicking" of plaintiff's ears from behind on three or four occasions, unwanted physical touching by a member of the opposite sex co uld be deemed sexual in nature. Even though defendants deny that the touching an d certain comments were sexually-oriented, "harassing behavior that is not sexual ly explicit but is directed at w omen and motivated by discriminatory animus ag ainst women satisf ies t he 'based on sex' requirement." <u>Williams</u>, 187 F.3d at 565.

The alleged statements by the female manager, Heather Becker, need no inference and directly concerned rum ors of plaintiff's alleged promiscuity . Even where individual instances of sexual ha rassment do not on their own create a hostile environment, t he accumulated effect of su ch incidents may result in a Title VII violation. <u>Williams</u> , 187 F.3d at 563. The Court m ust construe any reasonable inferences in plaintiff's favor for purposes of summary judgment review. Although plaintiff's showing regarding the severity of the alleged harassm ent is not strong compared to some cases, it is at least sufficient to withstand summary judgment. Summary judgment is appropriate only if the evidence is so one-sided that there is no genu ine issue of material fact as to w hether there w as a hostile w ork

environment. Abeita v. Transam. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).

The record before this Court indicates that plaintiff subjectively regarded her work environment as hostile or abusive. Repeated false accusations of promiscuity would certainly be humiliating to a young woman.  As alleged, the sexual-oriented remarks were not simply crude jokes or generally offensive comments.  Rather, as characterized by plaintiff,  the alleged statements were personally directed  to her own character and reputation.  In ad   dition to the incidents already   described, plaintiff indicates that Reagon had an intimidating presence and was "really big and really tall," and that she had seen him throw "really big fits" at work (doc. no. 42 at 2, citing Robbins Depo. at 85). A reasonable jury could find that plaintiff subjectively perceived her w ork environment to   be hosti le.  See,   e.g., Satterfield , 2010 WL 3365943 at *9.

Although defendant  Reagon contends th   at plaintiff has not "alleged or established that [his] conduct . . .  negati  vely impacted her ability  to perform her work or fulfill her job responsibilities" (doc. no. 37 at 6), plaintiff disputes this.  She has put fo rth affidavits of several w   itnesses indicating that plaintiff had great difficulty in facing her w  ork day due to  alleged harassm ent  by supervisors and coworkers (doc. no. 62, citing doc. nos. 40, 41, Affidavits of Kathleen Robbins and Brittany Harley).  The plaintiff need not  prove that her w ork performance act ually declined as a result, rather, she need only "show that the harassment made it more difficult to do the job." Harris, 510 U.S. at 25.  For purposes of summary judgment, plaintiff has shown that she subjectively regarded the work place as hostile and that

a reasonable person would find the work environment objectively hostile.

Construing the allegations in the light mo st favorable to plaintiff, the Court concludes that there are genuine disputes of material fact that preclude summary judgment. "Whether harassing conduct    is sufficientl y severe or pervasive to establish a hostile w ork environment is  'quintessentially a qu estion of fact.'  " Hawkins, 517 F.3d 332-333 (quoting Jordan v. City of Cleveland, 464 F.3d 584, 597 (6th Cir. 2006)); and see, e.g.,    Petty v. DHL Airw ays, Inc ., 176 F.Supp.2d 773 (S.D.Ohio 2001) (denying summary judgment where there were fact questions as to whether male supervisor's alleged sexuall y harassing conduct towards employee created a hostile environment).

Defendants next argue that they are entitled to summary judgment at the fifth step. Where harassment is attributed to a supervisor w       ith author ity o ver the employee, the court examines whether the supervisor's behavior "culminate[d] in a tangible employment action" against the employee. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).  Absent a "tangible action," an employer may still be liable for a hostile work environment created by its supervisors unless it establishes the affirmative defense that (1) it "exercised reasonable care to prevent and co    rrect promptly any  sexually  harassing behavior," and (2) "the plaintiff employ       ee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employ er or to avoid harm otherw ise." Id.  The employ er has an affirmative duty to prevent sexual harassment by supervisors.  Williams, 187 F.3d at 561.

-12-

Where t he harassment is attributed to non-supervisory    co-w orkers, an employer w ill be liable if the plaintiff    demonstrates that the employ er knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action.  Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998);  Hawkins, 517 F.3d at 332-333.  An employer is liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868, 872-73 (6th Cir. 1997).

Plaintiff's complaint refers to the "defendants' sexual harassment" (doc. no. 1 at ¶ 21) and does not identify    or st ate any facts regarding harassment by   co-workers.  Although plaintiff does not specifically mention co-worker harassment in her complaint, she does allege that R eagon "knew of the sexual  harassment and failed to prevent it or discipline the perpetrators, one of whom was Reagon himself" (doc. no. 1 at ¶ 11).  In her brief, plaintiff explains that unidentified co-workers called her by  an unw elcome nickname and spread untrue rumors about her alleged promiscuity (doc. no. 42 at 4, citing Robbins Depo. at 56-57).  Hence, the defendants address both types of alleged harassment.

At the fifth step, an employ er may be liable under Tit le VII for the acts of a supervisor, especially when they result in "tangible employment action." Burlington, 524 U.S. at  762; Faragher, 524 U.S. at 807. Although defendants argue that plaintiff quit and that no "tangible employ ment action" occurred, plaintiff alleges that she was constructively discharged.  A plaint iff claiming constructive discharge must show that "w orking conditions w ere "so difficult or unpleasant that a r easonable

-13-

person in the employee's shoes would have felt compelled to resign." Bowman, 220 F.3d at 464;  Kocsis v Multi-Care Management, Inc., 97 F.3d 876, 887 (6th Cir. 1996). Plaintiff contends that she w  as repeat edly subjected to untrue accusations of promiscuity and offensive sexual innuendo by  managers and co-w orkers, that rumors continued despite her complaint to an assistant manager, and that after she complained via an attorney 's let ter (Robbins Depo., Exh. 6), the managers w  ere furious with her for sending the letter and that she felt compelled to quit.

Regarding co-worker harassment, employer liability for co-worker harassment is based on the employer's conduct. Hafford, 183 F.3d at 513. An employer is liable if it "knew or should have know n of the charged sexual harassment and failed to implement prompt and appropriate corrective action." Id If the employer responded to an employ ee's complaint of co-w orker harassment, the employer will be liable only "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." McCombs v. Meijer, Inc., 395 F.3d 346, 353 (6th Cir. 2005).  Although defendants cont end that plaintiff did not follow  the restaurant's "open door" policy by reporting each alleged incident within three days, the plaintiff did complain to a manager who told the staff to stop the rumors and do their jobs.  Plaintiff indicates she then  was given more tab les, b ut t hat her co-workers continued to make offensive comments about her alleged promiscuity.

Columbus Hospitality  ("CH") asserts that after it received the letter from plaintiff's attorney, it promptly investigated the situation.  However, plaintiff disputes the adequacy of her employer's investigation and contends that the head of human

resources, Lee Hatter, never asked about Reagon's or Becker's alleged conduct ((doc. no. 62, citing Hatter Depo. at 48-50). Having complained to a manager and via attorney letter, plaintiff contends that her employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action. See Hawkins, 517 F.3d at 332; Knox v. Neaton Auto Prods. Mfg., 375 F.3d 451, 459 (6th Cir. 2004); Hampel, 729 N.E.2d at 732-33.

CH points to its handbook which contains a policy against sexual harassment and a procedure for employees to report such problems. Although this written policy is relevant to whether CH reasonably attempted to prevent harassment in the first place, it does not eliminate potential liability if CH knew or should have known about the harassing conduct and failed to respond appropriately "[A] company may be held liable for cow orker harassment if its 'response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.' " Hawkins, 517 F.3d at 338.

Plaintiff disputes the adequacy of CH's actions. The effectiveness of the employer's response is "measured not by the extent to which the employer disciplines or punishes the alleged harasser, but rather if the steps taken by the defendant halt the harassment." Stacy v. Shoney 's, Inc., 955 F.Supp. 751, 756 (E.D.Ky. 1997), aff'd 142 F.3d 436 (6th Cir.1998). Plaintiff points out that CH had a written statement from Becker indicating she heard employees discussing plaintiff's alleged promiscuity (doc. no. 62, citing Hatter Depo. at 83-84; Campbell Depo. Ex. 17). Plaintiff points out that CH took no remedial action and merely indicated it could

not corroborate plaintiff's claims (doc. no. 62 at 9-11, citing Reagon Depo. Ex. 7). Plaintiff notes that CH had previously warned Reagon about inappropriate conduct toward a female employee. See, e.g., Petty, 176 F.Supp.2d at 773 (denying summary judgment where there were fact questions as to whether employer exercised reasonable care to prevent and correct supervisor's harassment of employee).

## V. Conclusion

Summary judgment is precluded here by genuine disputes of material fact, namely 1) whether the alleged harassing acts were sufficiently severe or pervasive to create a hostile work environment, and (2) whether the employer responded reasonably to plaintiff's allegations of sexual harassment. It is for a jury to determine the credibility of any witnesses, weigh the evidence, resolve the disputed factual issues, and decide whether plaintiff is entitled to judgment.

In accordance with the foregoing, defendant Brian Reagon's "Motion for Summary Judgment" (doc. no. 37) is GRANTED in part and DENIED in part; and defendant Columbus Hospitality's "Motion for Summary Judgment" (doc. no. 60) is DENIED.

IT IS SO ORDERED.

S/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court

-16-